UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CARLOS MAZARIEGOS

CASE NO. 8:17 cr 94 T 17 TGW

18 U.S.C. § 371

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**

**A. Introduction**

At all times material to this Information:

1. Carlos Mazariegos was a resident of the Middle District of Florida, a licensed pharmacist, and co-owner of Lifecare Pharmacy.

2. Pharmland LLC d/b/a Lifecare Pharmacy (Lifecare) was a retail and compounding pharmacy located in Pinellas County in the Middle District of Florida co-owned and operated by Carlos Mazariegos and Benjamin Nundy. Lifecare produced compounded creams for scars, pain, and other ailments, among other things. Lifecare billed TRICARE and other health care benefit programs for these creams, each of which typically ranged in price from approximately $900 to $21,000 for a one-month supply. Lifecare was engaged in a marketing relationship with Centurion Compounding, Inc. from in or

around May 2014, until in or around November 2014, pursuant to which Lifecare paid Centurion a kickback of approximately 50% of each claim paid by TRICARE or other health care benefit program, minus expenses, for each prescription sent to Lifecare by Centurion.

3. Centurion Compounding Inc. (Centurion) was a marketing firm located in Pasco County in the Middle District of Florida co-owned and operated by F.M. and K.A. that employed sales representatives as independent contractors to market compounded medications, specifically creams for pain and scars, among others, to beneficiaries of health care plans. Centurion focused its promotional efforts on TRICARE beneficiaries based upon an understanding and belief that TRICARE would pay claims for these compounded creams. Centurion directed the patients it recruited and the physicians in its network to send all of their prescriptions for these compounded creams to Centurion, which transmitted the prescriptions to Lifecare to be filled. Centurion paid its sales representatives a percentage of the paid claims it received from Lifecare, which ranged from 10-25% of the total claim amount after expenses.

4. Dr. A.B. was a licensed physician working in the Middle District of Florida. Dr. A.B. agreed to be an "in network" physician for Centurion and prescribed compounded creams to TRICARE and other health care benefit

program beneficiaries recruited by Centurion, whose prescriptions were filled at Lifecare.

5. TRICARE was a federal health care benefit program that provided coverage for U.S. military members, retirees, and their family members. TRICARE was a federal health care benefit program, as defined by 18 U.S.C. § 24(b).

6. Medicare was a federal insurance program that provided coverage for people 65 and older, people under 65 with certain disabilities, and people of all ages with end-stage renal disease. Medicare was a health care benefit program as defined by 18 U.S.C. § 24(b).

**B. <u>The Conspiracy</u>**

7. Beginning on an unknown date, but at least as early as in or around May 2014, and continuing through and including in or around 2015, in the Middle District of Florida and elsewhere,

CARLOS MAZARIEGOS,

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with Benjamin Nundy and others, both known and unknown to the United States Attorney, to commit health care fraud, in violation of 18 U.S.C. § 1347.

### C. Manner and Means

8. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others:

a. It was a part of the conspiracy that conspirators Carlos Mazariegos and Benjamin Nundy would and did own and operate Lifecare in Pinellas County in the Middle District of Florida. Lifecare filled retail prescriptions but also produced compounded medications, particularly creams, prescribed by Dr. A.B. and others that were, in many cases, marketed by Centurion.

b. It was further part of the conspiracy that conspirators Carlos Mazariegos and Benjamin Nundy would and did bill and caused to be billed TRICARE and Medicare for prescriptions for TRICARE and Medicare beneficiaries filled at Lifecare.

c. It was further part of the conspiracy that conspirators Carlos Mazariegos and Benjamin Nundy would and did open and control bank accounts in the name of Lifecare into which funds from TRICARE and Medicare were received as a result of claims for payment made by the conspirators on behalf of Lifecare.

d. It was further part of the conspiracy that conspirator Carlos Mazariegos, acting on behalf of Lifecare, would and did enter into a

marketing relationship with F.M. and K.A. on behalf of Centurion in or around May 2014. Mazariegos, F.M., and K.A. agreed that Lifecare would pay an illegal kickback to Centurion equal to approximately 50% of the proceeds of claims paid to Lifecare by TRICARE and other health care benefit programs, after expenses, for prescriptions directed by Centurion to Lifecare to be filled.

e. It was further part of the conspiracy that conspirators at Centurion would and did employ sales representatives to recruit patients to be seen by physicians, which patients would be provided with preprinted prescriptions featuring compounded medications with high rates of reimbursement for such generalized ailments as pain and scars. The doctors would in turn prescribe these Centurion-promoted compounded creams, which prescriptions were routed through Centurion to Lifecare to be filled.

f. It was further part of the conspiracy that Carlos Mazariegos, Benjamin Nundy, and conspirators at Centurion, including F.M. and K.A., would and did agree to pay illegal kickbacks to Dr. A.B. equal to approximately 10% of the after-cost amount of each claim paid by TRICARE and other health care benefit programs as a result of prescriptions for compounded medications written by Dr. A.B. and filled by Lifecare for

Centurion-recruited patients. The conspirators agreed that the amount of Dr. A.B.'s kickbacks would be split evenly between Lifecare (5%) and Centurion (5%).

g. It was further part of the conspiracy that conspirators would and did agree that Lifecare and Carlos Mazariegos would pay Dr. A.B. his illegal kickbacks by deducting Centurion's portion of the kickbacks (5%) from Centurion's percentage of the proceeds owed to it pursuant to the marketing contract between Lifecare and Centurion, and combining those funds with Lifecare's portion of the illegal kickbacks (5%) due to be paid to Dr. A.B.

h. It was further part of the conspiracy that conspirator Carlos Mazariegos would and did make cash payments and provide other things of value, including payment for a BMW automobile, to Dr. A.B. as kickbacks for writing prescriptions for compounded creams for Centurion-recruited patients, many of whom were TRICARE beneficiaries, which prescriptions were filled at Lifecare.

i. It was further part of the conspiracy that conspirators Carlos Mazariegos and Benjamin Nundy would and did enter into an agreement with Dr. A.B. to pay Dr. A.B. illegal kickbacks for prescriptions for compounded creams written by Dr. A.B. for non-Centurion recruited patients. Mazariegos and Nundy agreed to pay Dr. A.B. approximately 15% of the

after-cost amount of such claims paid by health care benefit propgrams as a result of prescriptions for compounded medications written by Dr. A.B. and they provided Dr. A.B. with cash payments and other things of value in fulfillment of this kickback agreement.

j. It was further part of the conspiracy that the conspirators at Lifecare, Carlos Mazariegos and Benjamin Nundy, would and did bill and caused to be billed Medicare and other health care benefit programs for compounded medications that Lifecare made with bulk powder ingredients when they knew that Medicare only reimbursed for such medications when they were made with crushed tablets.

k. It was further part of the conspiracy that the conspirators would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and artifice to defraud and the purpose of those acts.

### D. Overt Acts

9. In furtherance of, and to affect the objectives of the conspiracy, the following overt act, among others, was committed in the Middle District of Florida and elsewhere:

On or about December 3, 2014, Carlos Mazariegos wrote a check to Bert Smith BMW for $71,900 from his Wells Fargo Account ending in -5756, which was funded entirely with the proceeds from the operation of Lifecare, to pay for a BMW for Dr. A.B. in partial satisfaction of kickbacks owed to Dr. A.B. by Lifecare and Centurion.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURES

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1347, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3. The property to be forfeited includes, but is not limited to, the following: a money judgment in the amount of $6,404,793.24.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A. LEE BENTLEY, III
United States Attorney

By: ______________________
Amanda L. Riedel
Assistant United States Attorney

By: ______________________
Megan K. Kistler
Assistant United States Attorney

By: ______________________
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

*T:_Cases\Criminal Cases\M\MAZARIEGOS, Carlos_2016R00415_ALR\p_Information_Mazariegos.docx*